# UNITED STATES DISTRICT COURT
for the

United States of America )
v. )
Timothy Green, and ) Case No. 10-mj-015
Christopher Crawford, and )
Michael Young )
)
*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of 8/28/09 - 2/26/10 in the county of ____Shelby____ in the ____Western____ District of ____Tennessee____, the defendant violated __18__ U. S. C. § § 371, 666(a)(1) and 1951(a) an offense described as follows:

Conspiracy to Commit Bribery and Extortion, Bribery, and Extortion.

This criminal complaint is based on these facts:
See Attached Affidavit

☐ Continued on the attached sheet.

_____
Complainant's signature

Matthew J. Ross, Special Agent FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 26 Feby 2010

S/Charmiane G. Claxton
Judge's signature

City and state: ____Memphis, TN____    CHARMIANE CLAXTON-U.S. MAGISTRATE JUDGE
Printed name and title

## AFFIDAVIT

I, Matthew J. Ross, being duly sworn, depose and state the following:

## I.
## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (hereinafter referred to as the FBI), United States Department of Justice, and have been so employed for approximately eight years. I am currently assigned to the FBI Memphis Division's White Collar Crimes Squad and am responsible for investigating crimes related to public corruption and illegal conduct by public officials, namely police officers.

2. During my employment with the FBI, I have conducted and participated in numerous public corruption and civil rights investigations involving police officers, many of which have resulted in guilty pleas and convictions. As part of the training for my current position, I received four months of general agent training at the FBI Academy in Quantico, Virginia, as well as other in-service training classes received after graduation.

3. I make this affidavit in support of complaints and arrest warrants charging TIMOTHY LEE GREEN, CHRISTOPHER CRAWFORD, and MICHAEL YOUNG with violations of Title 18, United States Code, Section 1951 (interference with commerce by threats or violence), Title 18, United States Code, Section 666 (theft or bribery concerning programs receiving Federal funds), and 18 United States Code 371 (conspiracy to commit offense or to defraud United States).

4. The information in this affidavit is based upon my personal knowledge of the events set forth herein, and information provided to me by other law enforcement personnel, cooperating individuals and other sources of information. Due to this affidavit being submitted for the limited purposes of obtaining a complaint and arrest warrant, I have not included each and every fact known to me or other law enforcement personnel concerning this investigation, but set forth only those facts that I believe are necessary to establish probable cause.

5. The Memphis Police Department is a local government entity that provides police services to the public in the city of Memphis, Tennessee. The Memphis Police Department employs approximately 2300 police officers.

6. During the one year period beginning January 1, 2009, and ending December 31, 2009, the Memphis Police Department of Memphis, Tennessee, received in excess of $10,000 in federal benefits under a federal program.

II.
SUMMARY OF THE INVESTIGATION

7. On September 3, 2009, an individual, who later became a source of information (hereinafter referred to as the "source"), was interviewed by the FBI regarding the source's involvement in a local nightclub located in Memphis, Tennessee (hereinafter referred to as "nightclub"). The source told the FBI that he/she was a silent partner in the nightclub and had invested $15,000 to $20,000

in the nightclub. The source then began working as a manager at the nightclub.

8. The nightclub is located in Memphis, Tennessee, and has both a liquor license and a beer permit. The nightclub sells liquor, wine, and beer that is manufactured and transported in from other states.

9. On September 4, 2009, the source advised that one of the majority owners of the nightclub (hereinafter referred to as Owner) told the source that he paid an on duty Memphis Police Department officer for cleaning the lot at the nightclub. "Cleaning the lot" is a phrase that refers to forcing patrons to leave the parking lot after the nightclub closes.

10. On September 5, 2009, the Owner identified the Memphis Police officer to the source as "Chris." The Owner told the source to call "Chris" if the source needed anything. The source then met "Chris" that night and obtained his telephone number.

11. On September 12, 2009, the source advised that he/she witnessed the Owner of the nightclub pay a Memphis Police officer named "Mike" $100 for "cleaning the lot." The source advised that the Owner balled the money up in his fist and discreetly passed the money to "Mike." The source further advised that "Mike was in uniform. On September 14, 2009, the source again witnessed the Owner pay "Mike" $100.

12. On September 17, 2009, the source identified Memphis Police Department officer CHRISTOPHER CRAWFORD from a photographic lineup as "Chris." The source also identified Memphis Police

3

Department officer MICHAEL YOUNG from a photographic lineup as "Mike."

13. On September 21, 2009, the Owner provided the source with $100 and instructed the source to pay CRAWFORD. Later that night, the source gave CRAWFORD the $100 while he was in uniform and on duty.

14. On October 2, 2009 at approximately 11:30 p.m., Colonel Jerry Blum, The Memphis Police Department Ridgeway Precinct commander, told all his officers at the midnight shift roll call that the Memphis Police Department's Organized Crime Unit would be conducting undercover operations inside the nightclub during that weekend. Both CRAWFORD and YOUNG were present for this briefing.

15. On October 3, 2009 at approximately 1:30 a.m., CRAWFORD called the source and told him/her that the police department was trying to shut the nightclub down. CRAWFORD further told the source that undercover officers were going to be in the nightclub over the weekend and that he would tell the source if there was any more information. CRAWFORD said, "I'm giving ya'll a heads up cause they said that in roll call." CRAWFORD also asked the source to limit telephone calls to him, as the police department might look at CRAWFORD's telephone records. The source met CRAWFORD later that morning in the men's bathroom of the nightclub and paid CRAWFORD the usual $100 and an extra $60 for the information about the undercover officers. CRAWFORD was on duty and in uniform during this meeting.

16. At approximately 1:39 a.m. that same morning, YOUNG called the source and advised that the nightclub needed to be on "high alert" because "they got a little something - something coming through." YOUNG further told the source "to make sure everything on the inside is legit." On October 4, 2009, the source met YOUNG in the men's bathroom of the nightclub and provided YOUNG with $100. The source also told YOUNG to share the extra $60 the source gave to Crawford for the new information. YOUNG was on duty and in uniform during this meeting.

17. From September 12, 2009 to October 19, 2009, the source either witnessed or paid YOUNG and CRAWFORD directly a total of approximately $1510. Many of these payments took place in the men's bathroom of the nightclub and many of the payments were audio and video recorded. Both CRAWFORD and YOUNG were in uniform and on duty when they accepted these payments. Both CRAWFORD and YOUNG admitted to the source that they shared their payments with each other.

18. On October 19, 2009, Memphis Police Department Lieutenant TIMOTHY GREEN approached the source about nuisance issues at the nightclub. Lieutenant GREEN is the current supervisor over the midnight shift at the Ridgeway precinct which covers police calls for the nightclub. Lieutenant GREEN is also in charge of a special police detail over the nightclub. The detail was created in response to numerous public complaints against the nightclub. Lieutenant GREEN and his detail were charged with gathering

5

evidence against the nightclub in order to shut it down as a nuisance.

19. Despite being in charge of gathering evidence against the club, Lieutenant GREEN told the source that the police department wanted to shut the club down. Lieutenant GREEN offered to meet with the source and the Owner privately to discuss how to keep the nightclub from being shut down. Later that morning, the source witnessed the Owner paying Lieutenant GREEN $100 in the stockroom of the nightclub. Lieutenant GREEN was in uniform and on duty at the time of this payment.

20. Based on the payment to Lieutenant GREEN, the FBI arranged for audio and video recording devices to be placed in nightclub's office.

21. On January 10, 2010, Lieutenant GREEN met the Owner in the office of the nightclub while on duty and in uniform. The Owner inquired about the status of the nuisance complaints against the club. Lieutenant GREEN offered to provide more officers at the club and told the Owner that he would have the "right guys" up at the club on Saturday and Sunday night. Lieutenant GREEN commented, "We don't need nuisance; we don't need no news." Lieutenant GREEN then told the Owner to stop paying CRAWFORD and YOUNG and only pay him. Lieutenant GREEN stated, "Don't take care of them, take care of me." The Owner told Lieutenant GREEN that he would take care of the Lieutenant the following day.

22. On January 11, 2010, the Owner met Lieutenant GREEN in the office of the nightclub and asked how much money he needed to pay Lieutenant GREEN. Lieutenant GREEN advised that he wanted $300. The Owner then paid Lieutenant GREEN $300 in cash. Lieutenant GREEN was on duty and in uniform during this meeting.

23. On or about January 16, 2010, a person was stabbed inside the nightclub. Later that morning, Lieutenant GREEN met with the Owner in the office of the nightclub. The owner asked Lieutenant GREEN if the incident would be a problem for the nightclub. Lieutenant GREEN advised that he would falsify the report to make it appear as if the stabbing occurred at the business next door. Lieutenant GREEN stated, "I'm going to type it up right." The owner then paid Lieutenant GREEN $500 in cash. Once again, Lieutenant GREEN was on duty and in uniform during this meeting.

24. On January 18, 2010, Lieutenant GREEN met the Owner in the office of the nightclub while on duty and in uniform. The Owner paid Lieutenant GREEN $300 in cash. Lieutenant GREEN then asked to be paid in one lump sum for the entire weekend, as he was concerned about coming into the office of the nightclub every night.

25. On January 23, 2010, Lieutenant GREEN met the Owner in the office of the nightclub while on duty and in uniform. Lieutenant reiterated that he wanted to limit the amount of times he was seen entering the nightclub's office and expressed concern that the Memphis Police Department's Organized Crime Unit may see

him in the nightclub. Lieutenant GREEN further stated that he had 24 years on as a police officer and needed to be paid an amount that was worth it. The Owner then paid Lieutenant GREEN $1000 in cash.

26. On January 24, 2009, the Owner and Lieutenant GREEN spoke by telephone. The Owner expressed his concern about a fight that happened inside the nightclub. Lieutenant GREEN stated, "The best thing you got is me on that typewriter. If I can say it happened somewhere else, then it happened somewhere else."

27. Lieutenant GREEN also asked that the Owner pay him $1200 a weekend instead of $1000. Lieutenant GREEN explained that he had to pay three other officers and that he only kept $400 of that money for himself.

28. On January 25, 2010, Lieutenant GREEN met the Owner in the office of the nightclub while on duty and in uniform. The Owner paid Lieutenant GREEN $200 in cash. Lieutenant GREEN stated that he was passing some of the payments from the Owner on to CRAWFORD and YOUNG and another officer named Jamal Saulsberry. When the Owner asked about another officer that worked on the nightclub detail, Lieutenant GREEN stated that he was not paying him because, "he ain't that deep."

29. On January 31, 2010, Officers CRAWFORD and Saulsberry met the Owner in the office of the nightclub. CRAWFORD advised that he had not received any money from Lieutenant GREEN. However, CRAWFORD advised that YOUNG told CRAWFORD that he had received $100 from Lieutenant GREEN.

30. On February 6, 2010, Lieutenant GREEN met the Owner in the office of the nightclub while on duty and in uniform. Immediately upon entering the office, Lieutenant GREEN warned the Owner to check all the nightclub patrons' identifications. The Owner asked if "they" were sending someone in the nightclub. Lieutenant responded, "Yes." Based on the affiant's knowledge of the investigation, "they" refers to the Memphis Police Department. The Owner then paid Lieutenant GREEN $1200 in cash.

31. On February 13, 2010, Lieutenant GREEN met the Owner in the office of the nightclub while on duty and in uniform. The owner told Lieutenant GREEN that he planned to rent out time at a nearby after hours club. Lieutenant GREEN offered to take care of the Owner at the after hours club, but the Lieutenant stated that The Owner will have to take care of him. The Owner then paid Lieutenant GREEN $1200 in cash. Lieutenant GREEN stated that he has given some of his money provided by the Owner to his "guy" in the Memphis Police Department Organized Crime Unit for information about when they conduct underage drinking operations at the nightclub.

32. On February 19, 2010, Colonel Blum called Lieutenant GREEN and told him that undercover officers from the Memphis Police Department Organized Crime Unit would be conducting an operation at the nightclub during that upcoming Friday and Saturday. Later that day, Lieutenant GREEN met the Owner at a local convenience store and handed the Owner a sheet of paper that read, "Stay away. OCU is going to be in the club Friday and Saturday." Lieutenant GREEN

9

then stated he wanted $1200 for the nightclub, $500 for the after hours club, $400 for the information about the Organized Crime Unit the previous weekend, and $300 for the information provided on the sheet of paper.

33. On February 22, 2010, Lieutenant GREEN called the Owner and asked to be let in the side door of the nightclub. The Owner and Lieutenant GREEN then met in the office of the nightclub. Lieutenant GREEN was off duty and dressed in plain clothes. The Owner then paid Lieutenant GREEN $1700 in cash.

34. On February 24, 2010, the Owner and Lieutenant GREEN met at a convenience store while in plain clothes and off duty. The Owner paid Lieutenant GREEN the remaining $700.

35. From October 19, 2009 to February 24, 2010, the Owner paid Lieutenant GREEN in excess of $8,000. Most of these payments took place in office of the nightclub and were audio and video recorded. GREEN was in uniform and on duty when he accepted the majority of these payments.

36. On February 26, 2010, GREEN, CRAWFORD, and YOUNG were interviewed by the FBI. GREEN admitted taking payoffs from the Owner of the nightclub in exchange for using his official position to protect against a possible nuisance action against the nightclub. GREEN further stated that no one from the Memphis Police Department Organized Crime Unit provided him information about undercover officers working at the nightclub. GREEN admitted that he made that information up to extort money from the Owner of the nightclub.

37. YOUNG also admitted to taking payoffs in exchange for using his official position to protect the nightclub from a possible nuisance action. YOUNG stated that he shared a portion of the payoffs with CRAWFORD. YOUNG admitted that he received extra money for providing information about undercover officers working at the nightclub.

38. CRAWFORD also admitted to taking payoffs in exchange for using his official position to protect the nightclub from a possible nuisance action. CRAWFORD admitted that he received extra money for providing information about undercover officers working at the nightclub.

*[signature]*
MATTHEW J. ROSS
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 26th day of February, 2010.

S/Charmiane G. Claxton
CHARMIANE G. CLAXTON
U.S. Magistrate Judge